**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHONTEE LATHAM, | ) |
| | ) |
| Petitioner, | ) Civil Action No. 16-1005 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) |
| CYNTHIA LINK, THE ATTORNEY | ) |
| GENERAL OF THE STATE OF | ) |
| PENNSYLVANIA, and THE DISTRICT | ) |
| ATTORNEY OF THE COUNTY OF | ) |
| LAWRENCE, | ) |
| | ) |
| Respondents. | ) |

## OPINION AND ORDER

Shontee Latham ("Petitioner"), has filed this pro se Petition Under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 1, seeking to

attack his state court convictions for, *inter alia*, possession of a firearm without a license,

reckless endangering another person and terroristic threats, in connection with his firing of a gun

near a neighbor in the course of a disagreement.  Petitioner was sentenced to an aggregate

sentence of 5 - 10 years on the possession of a firearm without a license conviction, with the

remaining sentences all to run concurrently to the 5 – 10 year sentence.

For the reasons that follow, the Petition will be denied because none of the five grounds

for relief merits the grant of federal habeas relief.  Furthermore, because jurists of reason would

not find this disposition of the Petition debatable, a certificate of appealability will also be

denied.

## I. FACTUAL BACKGROUND

The Pennsylvania Superior Court, in its November 16, 2015 Memorandum, summarized

the rather simple facts of the crimes as follows:

> On the evening of September 30, 2008, [Sherbelle] Hall was at her neighbor's house at 219 West Lincoln Avenue in the Lincoln housing project in New Castle [, Pennsylvania] hanging out with friends when she looked outside and saw [Latham] leaning on a car that did not belong to him parked outside the residence. Ms. Hall recognized [Latham] so she went outside and told him to get off the car and when he wouldn't leave[,] she nudged him to try to make him move. [Latham] told Ms. Hall that no one was going to disrespect him and proceeded to pull a gun out of his pocket and fired a bullet into the air right above her head. Ms. Hall started yelling at [Latham] and began to walk away when [Latham] started following her and telling her that no one is going to disrespect him[.][H]e [then] pointed a gun at [Ms. Hall's] chest and told her he would "put one in her." Ms. Hall walked away from [Latham] and went back to her house and called the police.

ECF No. 10-30 at 1 - 2 (quoting the PCRA trial court opinion at 2 - 3).

## II. PROCEDURAL HISTORY

### A. State Court Procedural History

The Pennsylvania Superior Court, in its November 16, 2015 Memorandum, also

summarized the state court procedural history as follows:

> On April 23, 2010, a jury convicted Latham of firearms not to be carried without a license, possession of a firearm prohibited, recklessly endangering another person, and terroristic threats. On August 6, 2010, the trial court sentenced Latham to five to ten years' imprisonment. This Court affirmed Latham's judgment of sentence on appeal. *Commonwealth v. Latham,* 60 WDA 2011 (Pa. Super., filed Oct. 18, 2011) (mem. op.). Latham did not seek allocatur with the Pennsylvania Supreme Court.
>
> Latham filed a timely *pro se* PCRA petition. The PCRA court appointed counsel to represent Latham as a first time, indigent PCRA petitioner. Subsequently, Latham filed a *pro se* "Motion to Dismiss Counsel and Proceed Pro Se," expressing dissatisfaction with his court-appointed counsel. The PCRA court granted Latham's motion, and Latham proceeded to represent himself throughout

the PCRA hearing. At the conclusion of the hearing, the court denied Latham's PCRA petition. This timely *pro se* appeal followed.[3]

> [3]On July 16, 2015, this Court remanded the proceedings and directed the PCRA court to conduct a hearing and an on-the-record colloquy to confirm Latham's desire to proceed *pro se.* On August 28, 2015, the PCRA court conducted a hearing pursuant to <u>Commonwealth v. Grazier,</u> 713 A.2d 81 (Pa. 1998), and affirmed that Latham had made a knowing, voluntary and intelligent waiver of his right to counsel and that he continued to desire to proceed *pro se.* Latham additionally executed a written waiver of counsel on that date. Accordingly, we will now proceed to address the merits of Latham's appeal.

Latham raises the following issues for our review.

> 1. Whether my conviction resulted from ineffective assistance of counsel which so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place?
>
> 2. Whether trial counsel was ineffective in failing to seek suppression of police testimony regarding the unlawful forced entry into my home and arresting me in my shower?
>
> 3. Whether trial counsel was ineffective for eliciting damaging hearsay testimony and submitted additional hearsay testimony to my prejudice.
>
> 4. Whether trial counsel was ineffective for failing to impeach Sherbell[e] Hall with her multiple prior contradictory inconsistent statements.
>
> 5. Whether trial counsel was ineffective for his failure to object to the prosecutor's closing argument and moving for a mistrial on the grounds of:
>
> a. Appealing to the emotions of the jury
>
> b. Bolstering the credibility of witnesses, and
>
> c. Injecting facts not in evidence.

Appellant's Brief at 5.

ECF No. 10-30 at 2 – 3.

After the Superior Court affirmed the denial of PCRA relief, Petitioner did not file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court.

### B. Federal Court Procedural History

Petitioner filed the instant Petition in this Court. ECF No. 1. He raises five Grounds for Relief.

> **GROUND ONE**: There was insufficient evidence to sustain the conviction on all charges contained in the Information. A violation of Due Process.

ECF No. 1 at 5.

> **GROUND TWO**: Ineffective assistance of trial counsel for failing to seek suppression of police testimony by motion in limine.

Id. at 7.

> **GROUND THREE**: Ineffective assistance of trial counsel for failing to impeach the Commonwealth's witness with her prior statements.

Id. at 8.

> **GROUND FOUR:** Ineffective assistance of trial counsel for eliciting damaging hearsay testimony, and submitting additional hearsay to my prejudice.

Id. at 10.

> **GROUND FIVE:** Ineffective assistance of trial counsel for failing to object to prosecutor's closing argument and moving for a mistrial.

Id. at 12.

After requesting and receiving an extension of time, Respondents filed their Answer, ECF No. 10, and a Memorandum for Respondents, ECF No. 10-2, asserting that Petitioner was not entitled to relief. Along with the Answer, Respondents filed copies of much of the state court record. ECF Nos. 10-3 – 10-30. Respondents also caused the original state court records

to be lodged with this Court.  Petitioner filed a Traverse, ECF No. 13, and a Brief in Support of the Traverse.  ECF No. 14.

All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge.  ECF Nos. 5 and 9.

## III.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996.  Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue.  See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).  A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States

Supreme Court. Secondly, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

In addition, it is to be stressed that we look to the United States Supreme Court holdings under the AEDPA analysis as "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Rodriguez v. Miller, 537 F.3d 102, 106–07 (2d Cir. 2008) (citing Carey v. Musladin, 549 U.S. 70 (2006)). The United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pennsylvania Dept. of Corrections, 834 F.3d 263, 368 (3d Cir. 2016) (quoting, Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014). As the word unreasonable suggests, the Petitioner must do more than show that the State Court's decision was wrong, the Petitioner must show it was unreasonable. Wurst v. Overmyer, CV 17-336, 2018 WL 4005874, at *3 (W.D. Pa. Aug. 22, 2018) ("To satisfy his burden under this clause of § 2254(d)(1), the Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. Id. He must show that it 'was objectively unreasonable.' Id. '[S]o long as

'fairminded jurists could disagree' on the correctness of the state court's decision[,]' it is not an unreasonable one.") (some citations and internal quotations omitted).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV. DISCUSSION

### A. Ground One Does Not Merit Relief.

In Ground One, Petitioner asserts that there was insufficient evidence to convict him of his crimes. Specifically, Petitioner argues that "[a]ll four charges in the Bill of Information depended upon proof that I possessed a firearm. The Commonwealth failed to provide a firearm at trial, and the State's sole witness testimony failed to prove all the elements beyond a reasonable doubt to establish the charges that I possessed a firearm; namely, proof of the length of the barrel, and proof that the alleged object did, or cold expel a projectile." ECF No. 1 at 5.

The Superior Court addressed this issue in its Memorandum Opinion on direct appeal, filed on October 18, 2011, and summarized the applicable law for sufficiency as follows:

> Lastly, Latham challenges the sufficiency of the evidence to support his convictions. "The standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." *Commonwealth v. Dale,* 836 A.2d 150, 152 (Pa. Super. 2003). The Commonwealth may sustain its burden of proving every element beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Bruce,* 916 A.2d 657, 661 (Pa. Super. 2007), *appeal denied,* 593 Pa. 754, 932 A.2d 74 (2007). The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. **See** *id.* Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. **See** *id.* As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. **See** *Commonwealth v. Kinney,* 863 A.2d 581, 584 (Pa. Super. 2004), *appeal denied,* 584 Pa. 685, 881 A.2d 819 (2005). Therefore,

we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Bruce,*** 916 A.2d at 662.

ECF No. 10-17 at 8.

Given that this case is a Section 2254 habeas proceeding, the AEDPA standard applies and that standard impacts the pertinent question before this Court. The pertinent question for a federal habeas court is not whether in its judgment the evidence was sufficient to support a finding that Petitioner was guilty. Indeed, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the United States Supreme Court standard for sufficiency of the evidence announced in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." <u>Id.</u> Indeed, for a federal habeas court reviewing a state court conviction, "the only question under <u>Jackson</u> is whether that finding [by the state courts of the evidence being sufficient] was so insupportable as to fall below the threshold of bare rationality." <u>Coleman v. Johnson</u>, 566 U.S. 650, 656 (2012).

### 1. Petitioner does not show that the Superior Court decision was "contrary to" in the first sense of applying a wrong rule of law.

Petitioner does not even argue that the state courts applied a wrong rule of law and, so he fails to carry his burden to show that the state courts' adjudication of this claim was contrary to United States Supreme Court precedent in the first sense of applying a wrong rule of law.

Indeed, we find that the state courts' legal test for the sufficiency of the evidence is not contrary to the United States Supreme Court test for the sufficiency of the evidence as announced in Jackson.

The state courts applied the standard of sufficiency as follows: "whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom is sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." ECF No. 10-17 at 8. The standard from the United States Supreme Court for review of a claim concerning the sufficiency of the evidence as drawn from Jackson v. Virginia, 443 U.S. at 319 is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Merely quoting the test from Jackson is more than adequate to show that the test of sufficiency employed by the state courts in Petitioner's case was not contrary to Jackson in the first sense of "contrary to" under the AEDPA. Eley v. Erickson, 712 F.3d 837, 848 (3d Cir. 2013) ("We agree with the Superior Court's later conclusion on PCRA appeal that these rules do not contradict *Jackson. Id*. at 612 ('[T]he federal standard enunciated in *Jackson* is [not] any different from that employed in Pennsylvania when reviewing sufficiency of the evidence questions.').... Thus, we hold that the Superior Court's adjudication of Eley's sufficiency of the evidence claim was not contrary to *Jackson*.").

### 2. Petitioner has not shown that the Superior Court decision was "contrary to" in the second sense of a materially indistinguishable United States Supreme Court case.

Petitioner has not carried his burden to show that the state courts' adjudication of his claim was "contrary to" any United States Supreme Court precedent in the second sense, i.e., that the state courts applied the correct rule of law but reached an outcome that is different from a

case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

### 3. Petitioner has not shown that the Superior Court unreasonably applied United States Supreme Court precedent on sufficiency of the evidence.

Petitioner has also failed to show that the Superior Court unreasonably applied the standard from Jackson.

The Superior Court applied the correct legal standard for the sufficiency of the evidence adduced at Plaintiff's trial and reasoned as follows:

> Instantly, Latham's argument in support of his challenge to the sufficiency of the evidence mirrors the argument in support of his challenge to the denial of [state] *habeas* relief, in that Latham primarily highlights the "speculative" nature of Ms. Hall's testimony. Latham argues that Ms. Hall's testimony cannot support a finding that he possessed a firearm, in that she was unable to precisely specify, *inter alia,* the make of the firearm or the length of the barrel.[8] Latham fails to specify any other element of his convictions the Commonwealth allegedly failed to prove beyond a reasonable doubt.

> _____
> [8] A "firearm" is defined under Section 6102 of the Crimes Code as "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." 18 PA.CONS.STAT.ANN. § 6102. At trial, Ms. Hall estimated the barrel of the gun Latham fired was approximately 5 inches in length. N.T., Jury Trial, 4/20/10, at 32.

> It is axiomatic that the fact finder is free to believe all, part or none of the evidence presented." ***Commonwealth v. Haughwout,*** 837 A.2d 480, 484 (Pa. Super. 2003) (citation omitted). In convicting Latham of firearms not to be carried without a license and possession of a firearm prohibited, the jury clearly credited the testimony offered by the Commonwealth; specifically, Ms. Hall's testimony that when she was confronted by Latham he pulled a gun from his pocket and fired a shot approximately three feet away from her head and thereafter pointed the gun to her chest and threatened to "put one" into her person. N.T., Jury Trial, 4/20/10, at 30-32. This Court may not disturb such findings of fact on a sufficiency of the evidence review. See ***Commonwealth v. Wilson,*** 825 A.2d 710, 713 (Pa. Super. 2003) ("A sufficiency of the

evidence review... does not include an assessment of the credibility of the testimony offered by the Commonwealth").   Moreover, we remind Latham that the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. ***Commonwealth v. Muniz,*** 5 A.3d 345, 348 (Pa. Super. 2010). Accordingly, Latham's challenge to the sufficiency of the evidence to support his convictions is without merit.

Judgment of sentence affirmed.

ECF No. 10-17 at 8 – 10.

Petitioner does not explicitly argue that the foregoing is an unreasonable application of the Jackson standard.  Instead, Petitioner makes two main arguments.  First, he argues that the evidence by the victim regarding the length of the gun was insufficient to establish that the weapon he possessed met the statutory definition.  ECF No. 1 at 5.  Secondly, he argues that there was insufficient evidence that the weapon expelled a bullet notwithstanding that he fired the gun.  Id.  Neither argument persuades the Court.

### a. Sufficient evidence of barrel length.

The reasoning quoted above from the Superior Court found that the evidence of the victim with regards to the length of the gun that Petitioner possessed and fired was sufficient evidence for the jury to find that the weapon met the statutory definition of a gun so as to support Petitioner's convictions.   This is certainly not an unreasonable application of United States Supreme Court precedent on sufficiency of the evidence.  Petitioner asserted that the victim stated that she did not see a gun at her testimony for the hearing on the omnibus pretrial motions. ECF No. 10-16 at 17 -18.[1] That the victim may have testified any differently at trial than at the

---

[1]  In fact, Petitioner mischaracterizes the totality of the victim's testimony at the omnibus pretrial motion haring.   When the victim stated at that hearing that she "didn't exactly see it" she stated so in response to the question: "Can you describe what the gun looked like."  ECF No. 10-5 at 8,

(… footnote continued)

hearing on the omnibus pretrial motion does not thereby render her testimony at trial insufficient under Jackson but only leaves her trial testimony open to attack on grounds of impeachment and credibility.

**b. Sufficient evidence that the gun could expel bullets.**

Petitioner also argues that there was insufficient evidence that the weapon could expel a projectile and that the trial court's finding of fact that he shot a bullet was not supported by the evidence. See ECF No. 14 at 11. However, the victim's testimony that she heard a shot, is sufficient evidence that the weapon was capable of expelling a projectile. Moreover, her testimony that Petitioner repeatedly said to her that he would put a bullet in her or put "one" in her is sufficient evidence to support a rational trier of fact to infer that the gun was loaded with bullets. As the Superior Court correctly noted, "[t]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ECF No. 10-17 at 8. The testimony of the victim need not have conclusively excluded that the gun was incapable of firing bullets in the face of the testimony by the victim which indicated Petitioner had threatened he would put one in her. The Superior Court's disposition of this claim was clearly not contrary to or an unreasonable application of Jackson. See e.g., Jackson v. Virginia, 443 U.S. at 326 ("Only under a theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt could this petitioner's challenge be sustained. That

---

lines 22 -25. Taken in a light most favorable to the Commonwealth, this statement that the victim "didn't exactly see it," means that she did not get a good enough look at the gun to describe it in detail, it does not mean that she failed to see Petitioner's gun. She repeatedly stated throughout the omnibus pretrial motion hearing that she most certainly did see a gun. Id. at 8, line 8; at 9, lines 8 – 14; at 18, lines 19 – 23; at 21, lines 12 -16; at 26, lines 12 -17; at 27, lines 19 – 20.

theory the Court has rejected in the past. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150. We decline to adopt it today. Under the standard established in this opinion as necessary to preserve the due process protection recognized in *Winship*, a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

At the very least, Petitioner fails to show, as is his burden in federal habeas proceedings, that the evidence cited by the Superior Court and the trial court on direct appeal in support of their finding of sufficient evidence constituted a "finding [by the state courts that] was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. at 656.

Simply put, Petitioner has failed to establish that the state courts' adjudication of this claim was contrary to or an unreasonable application of United States Supreme Court precedents regarding the sufficiency of evidence. As such, Ground One does not support federal habeas relief.

### B. Grounds Two through Five Do Not Merit Relief.

The next four Grounds for Relief all involve allegations of ineffective assistance of counsel. For the reasons that follow, we find Grounds Two through Five are meritless.

### 1. The decision of the state courts is not contrary to Strickland.

In addressing the claims of trial counsel's alleged ineffectiveness, which Petitioner raised before the state courts and also raises in the instant Petition here in Grounds Two, Three, Four, and Five, the Superior Court applied the state court test for ineffective assistance of counsel derived from Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987) (the "Pierce standard"). ECF

No. 10-30 at 4 – 5.   The <u>Pierce</u> standard has been found to be materially identical to the test

enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Werts</u>, 228 F.3d at 203.  The

United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary

to" <u>Strickland</u> in the sense of being a wrong rule of law.  Hence, Petitioner cannot show that the

Superior Court's disposition of Grounds Two through Five is contrary to United States Supreme

Court precedent in the first sense of applying a wrong rule of law.  Nor has Petitioner shown that

the Superior Court's disposition is contrary to United States Supreme Court precedent in the

second sense, <u>i.e.</u>, he fails to point a case decided by the United States Supreme Court where the

facts are indistinguishable from his case but where the state court reached an outcome different

from the outcome reached by the United States Supreme Court.

**2.  The state courts did not unreasonably apply <u>Strickland</u>.**

**a. The unreasonable application standard for ineffectiveness.**

Moreover, Petitioner has failed to show that the Superior Court's decision constituted an

unreasonable application of Supreme Court precedent on ineffective assistance of counsel.

In <u>Strickland</u>, the United States Supreme Court explained that there are two components

to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient.  This requires

showing that "counsel's representation fell below an objective standard of reasonableness."  <u>Id</u>. at

688; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. at 390-91.  In reviewing counsel's actions, the court

presumes that counsel was effective. <u>Strickland</u>, 466 U.S. at 689. There is no one correct way to

represent a client and counsel must have latitude to make tactical decisions.  <u>Lewis v.</u>

<u>Mazurkiewicz</u>, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would

have ultimately proved more successful, counsel's advice was reasonable and must therefore be

sustained.").  In light of the foregoing, the United States Court of Appeals for the Third Circuit

has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should

succeed under the properly deferential standard to be applied in scrutinizing counsel's

performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997) (quoting United

States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the

deficient performance. "This requires showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  To

establish prejudice, the defendant "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at

694; see also Williams, 529 U.S. at 391.

Moreover, because the state courts addressed Petitioner's claims of ineffectiveness on the

merits, this Court must apply the deferential standards of the AEDPA as to those claims, which

results in a doubly deferential standard as explained by the United States Supreme Court:

> "Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult. The standards created by
> *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct.
> 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d
> 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*,
> 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so
> the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at
> 1420].  Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under § 2254(d). When
> § 2254(d) applies, the question is not whether counsel's actions were reasonable.
> The question is whether there is any reasonable argument that counsel satisfied
> *Strickland's* deferential standard."

Premo v. Moore, 562 U.S. 115, 122 - 123 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)). Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'"), *rejected on other grounds by*, Dennis, 834 F.3d at 293.

### 3. Ground Two does not afford relief.

In Ground Two, Petitioner asserts that his trial counsel was ineffective for not seeking to suppress the "police testimony detailing the resistance they met when they forced their way into my home w/o a warrant, and subsequently performing a warrantless search of my home and warrantless arrest of my person." ECF No. 1 at 7. In addressing this claim of ineffectiveness, the Superior Court reasoned as follows:

> To the extent Latham argues that trial counsel was ineffective for failing to seek a motion *in limine* to preclude the police testimony, counsel testified at the PCRA hearing that he did not seek to preclude the testimony regarding the circumstances of Latham's arrest because he "needed the jury to hear that the police never found a gun." N.T., PCRA Hearing, 1/31/14 at 96. Given that Latham was charged with firearms-related offenses, it was entirely reasonable that trial counsel would have wanted to elicit the fact that a firearm was not discovered in Latham's residence at the time of his arrest shortly after the incident was alleged to have occurred. We therefore find that trial counsel had a reasonable basis for not seeking to preclude the police testimony. Accordingly, counsel was not ineffective.

ECF No. 10-30 at 6. Petitioner has not convinced this Court, as is his burden, that Superior Court's disposition of this claim of ineffectiveness was, under the doubly deferential AEDPA standard, unreasonable or, in other words, that there is no "reasonable argument that counsel satisfied *Strickland's* deferential standard." Premo v. Moore, 562 U.S. at 123.

Even if we were to review this claim *de novo*, we would find that Petitioner suffered no prejudice from the introduction of this evidence given the eyewitness account of the victim as to the Petitioner possessing and shooting the gun during the confrontation.

Accordingly, Ground Two does not afford Petitioner federal habeas relief.

### 4. Ground Three does not afford relief.

In Ground Three, Petitioner asserts that trial counsel was ineffective for failing to impeach the victim with her allegedly prior inconsistent statements/testimony that she provided at Petitioner's preliminary hearing and the hearing on Petitioner's omnibus pretrial motion.

The Superior Court rejected the claim raised as Ground Three in the instant Petition as follows:

> Latham next contends that trial counsel was ineffective for failing to impeach the victim's trial testimony with prior inconsistent statements from the pretrial hearing. Latham pinpoints five minor inconsistencies in the victim's testimony to support his argument. ***See*** Appellant's Brief at 36–39.
>
> At the PCRA evidentiary hearing, trial counsel testified that he did not use the preliminary hearing transcript at trial, because he "felt the police report was more valuable in getting admissions that the complainant was a liar." N.T., PCRA Hearing, 1/31/14 at 69. Counsel further explained that "there were not enough significant inconsistencies in [the victim's pretrial testimony] to warrant using the [preliminary hearing transcript], which is why I didn't." ***Id.*** at 73. The PCRA court agreed with counsel's assessment, reasoning that "[a]ttempting to discredit the victim in minor matters such as the barrel length of the revolver, its color, and whether [Latham] ran or walked home would have reinforced the testimony as to how the incident occurred." PCRA Court Opinion, 7/14/14 at 11.
>
> We find no abuse of discretion in the PCRA court's analysis. Rather than risk reaffirming the victim's account of the incident, counsel chose to forego impeaching the witness on minor details. This strategy was reasonably advanced to avoid highlighting the instances where the victim's testimony varied [sic[2]]. Accordingly, we find trial counsel was not ineffective for failing to impeach the victim on minor inconsistencies with her pretrial statements.

---

[2] Given the context, we believe that there is a typographical error in this sentence. We believe that the sentence instead should read as "This strategy was reasonably advanced to avoid highlighting the instances where the victim's testimony [had not] varied."

ECF No. 10-30 at 9 – 10.

Petitioner has not convinced this Court, as is his burden, that the Superior Court's disposition of this claim of ineffectiveness was, under the doubly deferential AEDPA standard, objectively unreasonable or, in other words, that there exists no "reasonable argument that counsel satisfied *Strickland's* deferential standard." Premo v. Moore, 562 U.S. at 123.

Accordingly, Ground Three does not afford Petitioner federal habeas relief.

**5. Ground Four does not afford relief.**

In Ground Four, Petitioner asserts that his trial counsel was ineffective for eliciting allegedly damaging hearsay testimony and for submitting additional hearsay testimony. More specifically, Petitioner complains that his trial counsel asked the victim "questions during trial that allowed the witness to testify that other named individuals who were unavailable to testify, including a party named Ashley Wise, saw me in possession of a gun. Afterwards, trial counsel himself corroborated the Commonwealth's witness statement by reading the police affidavit into evidence which alleged that Ashley Wise saw me with a gun." ECF No. 1 at 10.

The Superior Court addressed the claim raised by Petitioner in Ground Three of the instant Petition as follows:

> Latham next argues that trial counsel was ineffective for eliciting damaging hearsay testimony while questioning the victim on the existence of other witnesses to the gunshot. Latham objects to the following exchange.
>
> Q: Did any of them see outside during this incident?
>
> A: No. They heard the gunshot and they stayed—they didn't come out, no.
>
> Q: Did any of them see a gunshot?
>
> A: From inside, they seen it.

Q: Who?

A: Let's see, Ashley Wells, Ashley Wise, and Theresa was upstairs—no, Tina was outside. I don't know if Talesha seen—

Q: So, you claim that all of these girls actually saw a gunshot?

A: Yes.

Q: Ashley Wise included?

A: Yes.

N.T., Trial, 4/20/10 at 42. Latham argues that he was prejudiced when counsel permitted the victim to reference hearsay statements by the alleged witnesses to the shooting. This argument ignores the fact that counsel later used these statements to impeach the victim's credibility.

Q: You said Ashley Wise would have seen the gunshot?

A: She said—she told me that she seen him, yes. She's not here today. I couldn't get in contact with her.

Q: Do you know that Ashley spoke with the police officer after this incident?

A: I'm not sure if she spoke with them or not, but she showed up for me as a witness. So, I'm assuming that she did.

Q: Would it surprise you she told—she never told the police that she saw Mr. Latham shoot the gun?

A: Would it surprise me?

Q: Yes.

A: Yes, I would be a little bit surprised, because she told me she seen it. She showed up for me the first few times that we have come to court. This is the first time her not being here.

Q: Let me read to you the affidavit of probable cause filed by Officer Newton in this case. These are the exact words from his report. This Officer then spoke with Ashley Wise. This is after the

incident occurred. She stated that she was in her residence at 219 West Lincoln Avenue when she heard a gunshot.

A: OK. She said she heard, okay, not saw a gunshot. She heard a gunshot.

Q: She said she looked out the window, and then she claims that she saw Latham lower a handgun. She didn't say she saw a gunshot?

A: Well, she's—she told me differently....

Q: She told you that, but she told you later that she saw a gunshot?

A: Later, she told me that she didn't—no, she didn't say she actually seen the gun, but she said, yes, she seen him lowering the hand, and when we were arguing, when he had the gun at my chest, she said, yes, she seen that part.

Q: Didn't you just tell me that she told you she saw a gunshot?

A: She did tell me that.

Q: Now you're saying she didn't say that?

A: I'm saying—assuming it is written down.

Q: I guess you're not sure what you just told me.

*Id.* at 44–46.

The PCRA court determined that counsel's strategy in trying to "discredit the credibility of the witness or the investigation" was a reasonable one. PCRA Court Opinion, 7/14/14 at 10. The court reasoned that "[e]ssentially counsel was attempting to bring out inconsistencies in the statements of the victim and individuals who could have been called as witnesses to discredit the investigation and to suggest the entire incident was made up." *Id.*

We have no reason to disagree with the PCRA court's assessment of trial counsel's strategy. Counsel's use of the affidavit of probable cause to impeach the witness's credibility was clearly calculated to undermine the victim's testimony and thus, advance Latham's interest. The fact that Latham disagrees with counsel's strategy does not render it unreasonable. Therefore, Latham's claim that counsel was ineffective for permitting the witness to refer to hearsay statements of the alleged witnesses to the shooting lacks merit.

ECF No. 10-30 at 6 – 9.

Again, Petitioner has not convinced this Court, as is his burden, that Superior Court's disposition of this claim of ineffectiveness was, under the doubly deferential AEDPA standard, an objectively unreasonable application of Supreme Court precedent on ineffective assistance of counsel. Certainly, he fails to show that there is no "reasonable argument that counsel satisfied *Strickland's* deferential standard." <u>Premo v. Moore</u>, 562 U.S. at 123.

Accordingly, Ground Four does not afford Petitioner federal habeas relief.

### 6. Ground Five does not afford relief.

In Ground Five, Petitioner asserts that his trial counsel was ineffective for failing to object to the prosecutor's closing argument to the jury. Specifically, he complains that the "prosecutor told the jury that the trial experience was <u>demeaning</u> and <u>traumatic</u> for the Commonwealth's witness [<u>i.e.</u>, the victim]. The prosecutor also told the jury that the Commonwealth's witness told an '<u>accurate</u>' story, and finally, the prosecutor told the jury that the Commonwealth's witness story was <u>consistant</u> [sic] with her previous testimony she made at a pretrial hearing. However, the transcript to that hearing was not entered into evidence." ECF No. 1 at 12.

The Superior Court reasoned as follows in rejecting Petitioner's contention of trial counsel's alleged ineffectiveness raised as Ground Five in the instant Petition:

> Latham contends that the prosecutor's use of the phrase "demeaning and traumatic" to describe the incident for which Latham was arrested was improper. Contrary to Latham's argument, we find the prosecutor's comment was properly within the realm of oratorical flair that a prosecutor is permitted to use during closing arguments and was not likely to destroy the objectivity of the factfinder. ***See Commonwealth v. Novasak****,* 606 A.2d 477, 481 (Pa. Super. 1992).
> Latham also claims that the prosecutor made impermissible comments when she stated that although the victim mistakenly told police that the car on which Latham was leaning was hers, when it was actually her cousin's, "everything else she reported to the police accurately." Appellant's Brief at 54.

We conclude that in making this assertion, the prosecutor was merely encouraging the jury to draw an inference that could reasonably be derived from the evidence admitted at trial. *See Commonwealth v. Riggle*, 119 A.3d 1058, ——, 2015 WL 4094427, at *8 (Pa. Super. 2015). As we find the prosecutor's comments were permissible, counsel cannot be found ineffective for failing to object.

Latham lastly argues that the prosecutor impermissibly bolstered the victim's credibility by referencing facts outside of the record. Specifically, he contends that the following portion of the prosecutor's summation violated this Court's pronouncement in *Commonwealth v. Jubilee*, 589 A.2d 1112 (Pa. Super. 1991).

> When you think about consistency, you think about Sherbelle Hall. Okay. This is a transcript. Every pretrial proceeding, including the pretrial hearing, is transcribed, okay, and what that is, it's a tool that lawyers use so that when a witness gets on the stand, the lawyer can look up how—listen to how they testified here and then look up to see how they testified at a prior hearing. During this trial, defense counsel never, ever picked up this little transcript to show any inconsistency in Sherbelle Hall's testimony. Never once. Never once. That shows that for every hearing, including this trial, she has said the same thing over and over again.

N.T., Trial, 4/22/10 at 11–12. In *Jubilee,* this Court held that a prosecutor's reference to prior consistent preliminary hearing testimony that was not in evidence improperly bolstered a rape victim's testimony.

Our review of the record reveals no indication that the preliminary hearing transcript, or any other transcript in this matter, was introduced into evidence at trial. Accordingly, we agree with Latham that the prosecutor's reference to Sherbelle Hall's consistent testimony throughout all of the proceedings, include the pretrial hearing, improperly bolstered the victim's testimony.

However, even if the prosecutor's comment was improper, Latham must still establish that he suffered prejudice as a result, "*i.e.,* there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Laird,* 119 A.3d 972, 978 (Pa. Super. 2015) (citations omitted). Here, the trial court instructed the jury that statements made by counsel during summation do not constitute evidence and that the jury must decide the facts of the case based upon its own recollection and consideration of the evidence. N.T., Trial, 4/22/10 at 2–3. "[T]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Miller,* 819 A.2d 504, 513 (Pa. 2002) (citations omitted).

We therefore conclude that the trial court's instructions ameliorated any prejudice Latham may have suffered. Consequently, trial counsel was not ineffective for failing to object to the prosecutor's reference to the victim's consistent testimony based upon facts not in evidence.

ECF No. 10-30 at 10 - 14.

Petitioner does not even argue that the Superior Court's disposition of his ineffectiveness claims raised in Ground Five was an unreasonable application of United States Supreme Court precedent. Hence, Petitioner does not carry his burden to show that the Superior Court's disposition of this claim was an objectively unreasonable application of United States Supreme Court precedent on ineffectiveness.

Moreover, even if we were to review Ground Five *de novo, w*e would conclude that Petitioner could not establish prejudice based upon any deficient performance from counsel's failure to object to the prosecutor's closing remarks with respect to the consistency of the victim's testimony at prior hearings. We find that Petitioner fails to show prejudice based upon the following factors: 1) the record evidence before this Court of the testimony of the victim and Petitioner, both of whom took the stand; 2) as well as the fact that the victim had personally known Petitioner for several years; 3) that it was for the jury to decide the credibility of the witnesses; and, 4) both witnesses were in fact impeached by opposing counsel. We especially note that Petitioner's trial counsel did, in fact, utilize the statements which the victim made to the police about the car belonging to her, when the car actually belonged to her cousin (even though she apparently told the police shortly after her misrepresentation, that the car actually belonged to her cousin). N.T. April 20, 2010 at pp. 59 - 61. This cross examination of the victim by Petitioner's counsel was clearly intended to impeach the victim, and incidentally demonstrated that the victim's past statements were not entirely consistent, contrary to the prosecution's subsequent characterization in the closing argument to the jury. Thus, the question of the victim's past consistency was squarely before the jury for the jury to decide, notwithstanding the prosecutor's characterization of her prior statements as being consistent. In the face of the

inconsistencies pointed out by Petitioner's counsel in the victim's statements versus the prosecution's mere characterization to the contrary in the closing, and the trial court's instruction that statements of the counsel in closing are not evidence, and the further trial court instruction to the jury that it must decide the case on the evidence, we find that Petitioner has not demonstrated prejudice. Petitioner fails to persuade the Court that, but for the failure of trial counsel to object to the prosecution's characterization, there is a reasonable probability that the result of the trial would have differed.

Accordingly, we find Ground Five does not merit federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). The Court concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability will be denied.

## VI. CONCLUSION

**AND NOW,** this 15th of May 2019, it is hereby **ORDERED** that for the reasons set forth herein, the Petition is **DENIED**. Because we conclude that jurists of reason would not find the foregoing debatable, a certificate of appealability is likewise **DENIED**.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATE MAGISTRATE JUDGE

cc:     SHONTEE LATHAM
        HX4233
        PO Box 244
        Graterford, PA 19426

        SHONTEE LATHAM
        HX4233
        1200 Mokychic Drive
        Collegeville, PA 19426


        All counsel of record via CM-ECF